# IN THE SUPREME COURT OF CALIFORNIA

AMANDA FRLEKIN et al.,
Plaintiffs and Appellants,

v.

APPLE INC.,
Defendant and Respondent.

S243805

Ninth Circuit
15-17382

Northern District of California
3:13-cv-03451-WHA, 3:13-cv-03775-WHA and
3:13-cv-04727-WHA

---

February 13, 2020

Chief Justice Cantil-Sakauye authored the opinion of the Court, in which Justices Corrigan, Liu, Cuéllar, Kruger, Groban, and Edmon[*] concurred.

---

[*] Presiding Justice of the Court of Appeal, Second Appellate District, Division Three, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

FRLEKIN v. APPLE INC.

S243805

Opinion of the Court by Cantil-Sakauye, C. J.

Industrial Welfare Commission wage order No. 7-2001 (Wage Order 7) requires employers to pay their employees a minimum wage for all "hours worked." (Cal. Code Regs., tit. 8, § 11070, subd. 4(B).) "Hours worked" is defined as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so." (*Id.*, § 11070, subd. 2(G).)

We granted the request of the United States Court of Appeals for the Ninth Circuit to decide the following question of California law, as reformulated by this court (see Cal. Rules of Court, rule 8.548(f)(5)): Is time spent on the employer's premises waiting for, and undergoing, required exit searches of packages, bags, or personal technology devices voluntarily brought to work purely for personal convenience by employees compensable as "hours worked" within the meaning of Wage Order 7? For the reasons that follow, we conclude the answer to the certified question is, yes.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant Apple Inc. (Apple) is a leading personal technology provider. It operates retail stores worldwide, including 52 in California, that display and sell Apple products.

Apple requires its retail store employees to undergo exit searches pursuant to its "Employee Package and Bag Searches"

1

policy (hereafter the bag-search policy), which imposes mandatory searches of employees' bags, packages, purses, backpacks, briefcases, and personal Apple technology devices, such as iPhones. The bag-search policy states:

**Employee Package and Bag Searches**

All personal packages and bags must be checked by a manager or security before leaving the store.

**General Overview**

All employees, including managers and Market Support employees, are subject to personal package and bag searches. Personal technology must be verified against your Personal Technology Card (see section in this document) during all bag searches.

Failure to comply with this policy may lead to disciplinary action, up to and including termination.

**Do**

- Find a manager or member of the security team (where applicable) to search your bags and packages before leaving the store.

**Do Not**

- Do not leave the store prior to having your personal package or ba[g] searched by a member of management or the security team (where applicable).
- Do not have personal packages shipped to the store. In the event that a personal package is in the store, for any reason, a member of management or security (where applicable) must search that package prior to it leaving the store premises.

Apple also provides guidelines to Apple store managers and security team members conducting the searches pursuant to the bag-search policy. The guidelines reiterate that "[a]ll

Apple employees, including Campus employees, are subject to personal package checks upon exiting the store for any reason (break, lunch, end of shift)." The guidelines instruct Apple managers to "[a]sk the employee to open every bag, brief case, back pack, purse, etc.," "[a]sk the employee to remove any type of item that Apple may sell," and "[b]e sure to verify the serial number of the employee's personal technology against the personal technology log." The guidelines also direct Apple managers to "ask the employee to unzip zippers and compartments so [managers] can inspect the entire contents of the bag" and "ask the employee to move or remove items from the bag so that the bag check can be completed." "In the event that a questionable item is found," the manager must "ask the employee to remove the item from the bag." The guidelines provide that "Apple will reserve the right to hold onto the questioned item until it can be verified as employee owned."

The record indicates that Apple employees bring a bag to work for a variety of reasons. For example, some employees bring bags to carry Apple-provided apparel, which employees must wear while working but are required to remove or cover up while outside the store. Others bring bags containing their cell phones, food, keys, wallets, or eyeglasses. Managers estimated that 30 percent of Apple employees bring such bags to work; employees estimated that "nearly all" do.

Apple employees are required to clock out before submitting to an exit search pursuant to the bag-search policy. Employee estimates of the time spent awaiting and undergoing an exit search range from five to 20 minutes, depending on manager or security guard availability. On the busiest days, Apple employees have reported waiting up to 45 minutes to

undergo an exit search.  As a rule, they are not compensated for this time.

Plaintiffs Amanda Frlekin,[1] Taylor Kalin, Aaron Gregoroff, Seth Dowling, and Debra Speicher, suing on their own behalf and on behalf of a class of similarly situated Apple retail store employees, filed a complaint against Apple in federal district court.  The operative complaint alleges, among other things, that Apple failed to pay plaintiffs minimum and overtime wages for time spent waiting for and undergoing Apple's exit searches in violation of California law.[2]

The district court certified a class of all Apple California nonexempt employees who were subject to the bag-search policy from July 25, 2009 to the present.  In order to limit the issues regarding plaintiffs' individualized reasons for bringing packages, bags, or Apple personal technology devices to work, the district court specified in its certification order that the bag searches would be adjudicated as compensable or not based on the most common scenario — that is, an employee who voluntarily brought an item subject to search under the bag-search policy to work purely for personal convenience.  In other

---

[1]     Amanda Frlekin withdrew as a class representative but remains a party.

[2]     The complaint also included collective action claims under the federal Fair Labor Standards Act of 1938 (29 U.S.C. § 201 et seq.; FLSA) as well as class action claims under various states' labor laws, but the non-California law claims were stayed and ultimately dismissed following the United States Supreme Court's decision in *Integrity Staffing Solutions, Inc. v. Busk* (2014) 574 U.S. 27 (*Integrity Staffing*), which held that time spent undergoing mandatory security screenings was not compensable under the FLSA, as amended by the Portal-to-Portal Act of 1947 (29 U.S.C. § 251 et seq.; Portal-to-Portal Act).

words, the certified class did not include potential plaintiffs who were required to bring a bag or iPhone to work due to special needs (such as medication or disability accommodations).

Cross-motions for summary judgment followed. The district court granted Apple's motion and denied plaintiffs' motion. It ruled that time spent by class members waiting for and undergoing exit searches is not compensable as "hours worked" under California law. As relevant here, the court determined that the "hours worked" control clause in Wage Order 7 requires proving both that the employer restrains the employee's action during the activity in question *and* the employee has no plausible way to avoid the activity.

Plaintiffs appealed to the Ninth Circuit, which asked us to address the state law issue. (*Frlekin v. Apple, Inc.* (9th Cir. 2017) 870 F.3d 867, 869 (*Frlekin*).)

## II. DISCUSSION

The Industrial Welfare Commission (IWC) was established more than a century ago "to fix minimum wages, maximum hours of work, and standard conditions of labor." (*Martinez v. Combs* (2010) 49 Cal.4th 35, 50 (*Martinez*); Stats. 1913, ch. 324, § 13, p. 637.) "Pursuant to its 'broad statutory authority' [citation], the IWC in 1916 began issuing industry- and occupation-wide wage orders specifying minimum requirements with respect to wages, hours, and working conditions [citation]." (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1026.)

We construe wage orders, like wage and hour laws, so as to promote employee protection. (*Mendiola v. CPS Security Solutions, Inc.* (2015) 60 Cal.4th 833, 840 (*Mendiola*).) Our prior decisions have made clear that "wage orders are the type of

remedial legislation that must be liberally construed in a manner that serves its remedial purposes" of protecting and benefitting employees. (*Dynamex Operations West, Inc. v. Superior Court* (2018) 4 Cal.5th 903, 953 (*Dynamex*); see also *Augustus v. ABM Security Services, Inc.* (2016) 2 Cal.5th 257, 262 (*Augustus*) [when construing wage orders, courts adopt the construction that best gives effect to the Legislature and the IWC's purpose of protecting employees]; *Industrial Welfare Com. v. Superior Court* (1980) 27 Cal.3d 690, 702 [same].)

Wage Order 7[3] is one such wage order. (See Cal. Code Regs., tit. 8, § 11070.) Wage Order 7 requires employers to pay their employees a minimum wage for all "hours worked" (*id.*, § 11070, subd. 4(B)), defined as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so" (*id.*, § 11070, subd. 2(G)).

We have explained that the two phrases of the "hours worked" definition establish "independent factors, each of which defines whether certain time spent is compensable as 'hours worked.'" (*Morillion v. Royal Packing Co.* (2000) 22 Cal.4th 575, 582 (*Morillion*).) Thus, an employee who is *subject to the control* of an employer does not have to be working during that time to be compensated under the applicable wage order. (*Ibid.*) Likewise, an employee who is *suffered or permitted to work* does not have to be under the employer's control to be compensated, provided the employer has or should have knowledge of the employee's work. (*Id.* at pp. 584-585; *Troester v. Starbucks Corp.*

---

[3] Wage Order 7 covers all persons employed in the mercantile industry. (Cal. Code Regs., tit. 8, § 11070, subd. 1.)

(2018) 5 Cal.5th 829, 853; *Hernandez v. Pacific Bell Telephone Co.* (2018) 29 Cal.App.5th 131, 137 (*Hernandez*).)

With these principles in mind, we first consider whether the time spent waiting for and undergoing Apple's exit searches is compensable as "hours worked" under the control standard.

### A. The Language and History of the Control Clause Suggest that the Exit Searches are Compensable

"We independently review the construction of statutes [citation], and begin with the text. If it 'is clear and unambiguous our inquiry ends.' [Citation.] Wage and hour laws 'are to be construed so as to promote employee protection.' [Citations.] These principles apply equally to the construction of wage orders. [Citation.] Additionally, when the relevant facts are not in dispute, what qualifies as hours worked is a question of law, reviewed de novo." (*Mendiola*, *supra*, 60 Cal.4th at p. 840.)

Based on the language of the control clause, Apple employees are entitled to compensation for the time during which they are subject to Apple's control. (Cal. Code Regs., tit. 8, § 11070, subd. 2(G).) Applying a strictly textual analysis, Apple employees are clearly under Apple's control while awaiting, and during, the exit searches. Apple controls its employees during this time in several ways. First, Apple requires its employees to comply with the bag-search policy under threat of discipline, up to and including termination. Second, Apple confines its employees to the premises as they wait for and undergo an exit search. Third, Apple compels its employees to perform specific and supervised tasks while awaiting and during the search. This includes locating a manager or security guard and waiting for that person to

become available, unzipping and opening all bags and packages, moving around items within a bag or package, removing any personal Apple technology devices for inspection, and providing a personal technology card for device verification.

*Bono Enterprises, Inc. v. Bradshaw* (1995) 32 Cal.App.4th 968, 972 (*Bono*) (disapproved on other grounds in *Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557), supports our interpretation of the control clause. In *Bono*, temporary workers at a manufacturing plant were not given security clearance and were required to "remain on the plant premises during their 30-minute lunch period unless they ma[d]e prior arrangements to reenter the plant after leaving for lunch." (*Ibid.*) The Court of Appeal, relying on the dictionary definition of "control," held that the employees who were required to remain onsite during their lunch hour were entitled to compensation for that time. (*Id.* at p. 975.)

The *Bono* court focused on the phrase " '*subject to the control* of an employer[,]' " concluding that "[t]his language is neither vague nor unclear." (*Bono, supra*, 32 Cal.App.4th at pp. 947-975.) Based on two dictionary definitions of the word "control," the court interpreted the clause to mean "[w]hen an employer directs, commands or restrains an employee." (*Id.* at p. 975.) It explained: "These definitions are not obscure; they are meanings commonly attributed to the words chosen by the IWC to communicate the obvious — an employer must compensate an employee for the time during which the employer controls the employee." (*Ibid.*) Thus, "[w]hen an employer directs, commands or restrains an employee from leaving the work place . . . and thus prevents the employee from using the time effectively for his or her own purposes, that employee

remains subject to the employer's control.  According to [the applicable wage order], that employee must be paid." (*Ibid.*)

Apple asserts that an employee's activity must be "required" and "unavoidable" in order to be compensable.  But those words do not appear in the control clause.  Redefining the control clause to cover only unavoidably required employer-controlled activities would limit the scope of compensable activities, resulting in a narrow interpretation at odds with the wage order's fundamental purpose of protecting and benefitting employees. (*Augustus*, *supra*, 2 Cal.5th at pp. 262, 269; see also *Dynamex*, *supra*, 4 Cal.5th at p. 953 [courts must construe "hours worked" definition liberally to achieve wage order's terms and serve its remedial purposes].)  It would also "amount[] to improper judicial legislation" (*Morillion*, *supra*, 22 Cal.4th at p. 585), and we decline Apple's invitation to engage in such action.

Nor is Apple's interpretation consistent with the history of the "hours worked" definition in Wage Order 7.  In 1943, the IWC issued a "New Series" of Wage Orders (the "NS" series), which included a two-part definition of "[h]ours employed" modeled from the 1939 federal Interpretive Bulletin. (IWC wage order No. 7NS (June 21, 1943) (Wage Order 7NS).)  Under Wage Order 7NS, " '[h]ours employed' includes all time during which: [¶]  1.  A [person] is *required* to be on the employer's premises ready to work, or to be on duty, or to be at a prescribed work place.  [¶]  2.  A [person] is suffered or permitted to work, whether or not required to do so.  Such time includes, but shall not be limited to, time when the employee is required to wait on the premises while no work is provided by the employer and time when an employee is required or instructed to travel on the

employer's business after the beginning and before the end of her work day." (*Id.*, § 2(f), italics added.)

In 1947, Congress enacted the Portal-to-Portal Act, which significantly narrowed the federal definition of "hours worked." (*Martinez, supra*, 49 Cal.4th at p. 59.) "In response, the IWC, exercising its authority to provide employees with greater protection than federal law affords [citations], revised its wage orders from 1947 forward to define the term 'hours worked' as meaning 'the time during which an employee is *subject to the control of an employer*, . . . includ[ing] all the time the employee is suffered or permitted to work, whether or not required to do so.'" (*Id.* at p. 60; see IWC wage order No. 7R (June 1, 1947).) Since 1947, the IWC has issued ten more amended wage orders for the mercantile industry, but it has never changed the definition of "hours worked."

The history of the "hours worked" definition in Wage Order 7 indicates that the IWC purposely abandoned the narrower standard of compensating only "required" activities more than 70 years ago. The changes made in 1947 suggest that the IWC intended to make compensable the time "during which" employees are "control[led]," even if such time is not required. (Cal. Code Regs., tit. 8, § 11070, subd. 2(G).) This interpretation is bolstered by the IWC's decision to strike "require" from the control clause but to retain the word "required" in the "suffered or permitted to work" clause. (*Ibid.* ["hours worked" "includes all the time the employee is suffered or permitted to work, whether or not *required* to do so" (italics added)]; *Rashidi v. Moser* (2014) 60 Cal.4th 718, 725 [when the Legislature uses a word or phrase in one part of a statute differently from what it uses in other sections, two different meanings "must be presumed"]; *Singh v. Superior Court* (2006) 140 Cal.App.4th

387, 399 [applying this rule to IWC wage orders].) Interpreting the "hours worked" control clause as Apple suggests to cover only unavoidably required activities would not comport with the wage order's plain language or its history.

### B. *Morillion* and its Progeny do not Preclude Relief

Despite the plain language and history of the "hours worked" control clause, Apple maintains that its exit searches are not compensable under *Morillion* and its progeny because Apple employees may avoid such searches by choosing not to bring a bag, package, or personal Apple technology device to work. But it is not clear that *Morillion* supports such a conclusion.

In *Morillion*, we considered whether the time employees spent traveling to and from a worksite on employer-provided buses was compensable under the "hours worked" control clause. (*Morillion, supra*, 22 Cal.4th at p. 578.) There, the employer required its employees to meet each day at specified assembly areas and ride the employer-provided bus to and from agricultural fields where the employees worked. (*Id.* at p. 579.) As a rule, employees were prohibited from using their own transportation to and from the fields. (*Ibid.*) Employees who drove their personal vehicles to work were subject to disciplinary action, including the loss of a day's wages. (*Id.* at p. 579, fn. 1.)

We held that the employees in *Morillion* were entitled to compensation for their compelled travel time under the applicable wage order because they were " 'subject to the control of an employer' " during that time. (*Morillion, supra*, 22 Cal.4th at p. 578, citing Cal. Code Regs., tit. 8, § 11140, subd. 2(G).) By determining when, where, and how its employees must travel,

we reasoned, the employer in *Morillion* exercised a significant level of control over its employees. (*Morillion*, at p. 586.) As a result of this control, the employees "were foreclosed from numerous activities in which they might otherwise engage if they were permitted to travel to the fields by their own transportation." (*Ibid.*) We rejected the employer's argument that the employees were not under its control for the duration of the bus ride because they could engage in personal activities during that time, explaining that "[a]llowing [the employees] the circumscribed activities of reading or sleeping does not affect, much less eliminate, the control [the employer] exercises by requiring them to travel on its buses and by prohibiting them from effectively using their travel time for their own purposes." (*Ibid.*) We concluded that "[t]he level of the employer's control over its employees, rather than the mere fact that the employer requires the employees' activity, is determinative." (*Id.* at p. 587.)

In reaching this conclusion, we relied on *Bono*'s interpretation of the "hours worked" control clause. (*Morillion*, *supra*, 22 Cal.4th at p. 582, citing *Bono*, *supra*, 32 Cal.App.4th at p. 975.) Citing *Bono*, we held that the employees' compulsory travel time, which included the time they spent waiting for their employer's buses to begin transporting them, was compensable. (*Morillion*, at p. 587.) We explained: "[The employer] required [its employees] to meet at the departure points at a certain time to ride its buses to work, and it prohibited them from using their own cars, subjecting them to verbal warnings and lost wages if they did so. By ' "direct[ing]" ' and ' "command[ing]" ' [its employees] to travel between the designated departure points and the fields on its buses, [the employer] ' "control[led]" ' them

within the meaning of 'hours worked' . . . ." (*Ibid.*, citing *Bono*, at pp. 974-975.)

We emphasized in *Morillion* that our holding was limited to compulsory travel time. (*Morillion, supra,* 22 Cal.4th at pp. 587-588.) We clarified that the time employees spend commuting from home to the departure points and back again is not compensable. (*Ibid.*) We also noted that "[t]ime employees spend traveling on transportation that an employer provides but does not require its employees to use may not be compensable as 'hours worked.' " (*Id.* at p. 588.) Courts have applied *Morillion* in other cases involving employer-provided transportation, concluding that compulsory use of such transportation is compensable and optional use is not. (E.g., *Hernandez, supra,* 29 Cal.App.5th at p. 141 [time spent in company-provided vehicle between technician employee's home and customer's residence was not compensable as hours worked under control test because employee was not required to use company vehicle]; *Overton v. Walt Disney Co.* (2006) 136 Cal.App.4th 263, 271 (*Overton*) [time spent waiting for and riding employer-provided shuttle bus was not compensable as hours worked under control clause because shuttle was optional and alternative means of transportation existed].)

However, we are not aware of any California case[4] discussing the precise issue of whether time spent at the

_____

[4] We note that the federal high court's decision in *Integrity Staffing, supra,* 574 U.S. 27, does not guide our analysis. *Integrity Staffing* was based on the Portal-to-Portal Act's explicit classification of activities occurring both prior to and after the regular workday as non-compensable. (*Integrity Staffing,* at pp. 32-36.) However, we have already determined

worksite waiting for and undergoing exit searches is compensable as "hours worked." Apple maintains that this time is not compensable because, unlike the employees in *Morillion*, plaintiffs may theoretically avoid a search by choosing not to bring a bag or iPhone to work. We disagree.

As a preliminary matter, there are inherent differences between cases involving time spent traveling to and from work, and time spent *at* work. Commuting is an activity that employees ordinarily initiate on their own, prior to and after their regular workday, and is not generally compensable. (*Morillion*, *supra*, 22 Cal.4th at p. 587; Lab. Code, § 510, subd. (b) [time spent commuting to and from work is not considered to be part of a day's work].) Moreover, in the commute context, an employer's interest generally is limited to the employee's timely arrival. Generally speaking, it would not seem to matter to the employer how or when an employee travels, so long as the employee arrives on time. Thus, unless the employer *compels* the employee to use a certain kind of transportation or employer-provided transportation, it would be, without more, unreasonable to require the employer to pay for travel time.

In the present case, by contrast, Apple controls its employees *at the workplace*, where the employer's interest — here, deterring theft — is inherently greater. Moreover, the

---

that the Portal-to-Portal Act "differs substantially from the state scheme, [and] should be given no deference." (*Morillion*, *supra*, 22 Cal.4th at p. 588.) We have also recognized that "our departure from the federal authority is entirely consistent with the recognized principle that state law may provide employees greater protection than the FLSA." (*Id.* at p. 592.) Accordingly, we find *Integrity Staffing* to be neither dispositive nor persuasive. Apple does not argue otherwise.

level of Apple's control over its employees — the "determinative" factor in analyzing whether time is compensable under the control standard (*Morillion*, *supra*, 22 Cal.4th at p. 587) — is higher during an onsite search of an employee's bags, packages, and personal Apple devices. Apple employees who bring an item subject to search under the bag-search policy are: confined to the premises until they submit to the search procedure; required to locate a manager or security guard and wait for that individual to become available; and compelled to take specific actions and movements during the search, including opening their bags, unzipping internal compartments, removing their personal Apple technology devices and technology cards, and proving ownership of such items. Because Apple's business interests and level of control are greater in the context of an onsite search, the mandatory/voluntary distinction applied in *Morillion* is not dispositive in this context.

The nature of the controlled activity here is distinct from *Morillion* and its progeny in another respect: those cases involve optional services that primarily benefit the *employee*. In *Morillion*, we characterized optional employer-provided transportation as an employee benefit that should be encouraged as a policy matter. (*Morillion*, *supra*, 22 Cal.4th at p. 594.) We expressed optimism that our decision would not dissuade employers "from providing free transportation as a *service* to their employees." (*Ibid.*, italics added.) Reflecting this distinction, the Ninth Circuit recently described *Morillion* as holding that compensation was not required "[i]f employers offered a *benefit or service* that employees could choose, but were not required *to take advantage of*." (*Rodriguez v. Taco Bell Corp.* (9th Cir. 2018) 896 F.3d 952, 957, italics added; see also *Watterson v. Garfield Beach CVS LLC* (C.D.Cal. 2015) 120

F.Supp.3d 1003, 1007 [holding that under California law "restrictions imposed on the use of *optional benefits* provided by an employer to employees do not subject those employees to the control of the employer such that the Wage Order's requirements are applicable" (italics added)].) Similarly, in *Overton*, Walt Disney Company offered free shuttle busses as an optional benefit to employees assigned to the parking lot farthest from the employee Disneyland entrances. (*Overton*, *supra*, 136 Cal.App.4th at p. 266.) The Court of Appeal concluded that the employees' use of this optional benefit was not compensable as " ' "hours worked." ' " (*Id.* at p. 271.)

In other cases involving the "hours worked" control clause, we have found whether an employee's activity primarily benefits the employer to be a relevant consideration. (E.g., *Mendiola*, *supra*, 60 Cal.4th at pp. 841-842 [in deciding whether on-call waiting time constitutes "hours worked" under the control clause, courts have considered whether such time is spent primarily for the benefit of the employer and its business].) In *Madera Police Officers Assn. v. City of Madera* (1984) 36 Cal.3d 403, 409, we adopted a two-step analysis in determining whether limitations placed on police department employees' mealtime periods converted that time into hours worked. We examined first, "whether the restrictions on off-duty time are primarily directed toward the fulfillment of the employer's requirements and policies," and second, "whether the employees' off-duty time is so substantially restricted that they are unable to engage in private pursuits." (*Ibid.*) We concluded that the meal break restrictions, which required employees to return to duty if necessary, banned the conducting of personal business while in uniform, and prevented employees from scheduling

personal appointments, were imposed primarily for the benefit of the employer. (*Id.* at p. 410.)

Here, like *Madera* and *Mendiola,* and unlike *Morillion* and *Overton*, the employer-controlled activity primarily serves the employer's interests. The exit searches are imposed mainly for Apple's benefit by serving to detect and deter theft. In fact, they are an integral part of Apple's internal theft policy and action plan. The exit searches burden Apple's employees by preventing them from leaving the premises with their personal belongings until they undergo an exit search — a process that can take five to 20 minutes to complete — and by compelling them to take specific movements and actions during the search.

Apple acknowledges that the exit searches promote its interest in loss prevention, but nevertheless urges this court to view the searches as part of a broader policy that benefits its employees. Apple argues, in this regard, that it could have *totally prohibited* its employees from bringing *any* bags or personal Apple devices into its stores altogether, and thus employees who bring such items to work may reasonably be characterized as having chosen to exercise an optional benefit. However, Apple has not imposed such draconian restrictions on its employees' ability to bring commonplace personal belongings to work. Under the circumstances of this case and the realities of ordinary, 21st century life, we find far-fetched and untenable Apple's claim that its bag-search policy can be justified as providing a benefit to its employees.[5]

---

[5] However, it is uncontroverted that Apple may impose reasonable restrictions on the size, shape, or number of bags that its employees may bring to work, and that it may require

Moreover, as in *Morillion* and unlike *Overton* or *Hernandez*, Apple's exit searches are enforceable by disciplinary action. In *Morillion*, the employer's work rules specified that its employees would be subject to verbal warnings and lost wages if they drove a personal vehicle to work. (*Morillion*, *supra*, 22 Cal.4th at pp. 579, fn. 1, and 587.) In the present case, Apple's written policy explicitly provides that failure to comply with its bag-search policy may lead to disciplinary action, up to and including termination. Employees who do not comply with the policy may also be compelled to attend a "Warning Meeting," cited for "Behavior to be Corrected," and assigned to a "Coaching Tracker." This factor also strongly suggests that plaintiffs are under Apple's control while waiting for, and undergoing, the exit searches.

Furthermore, case law suggests that the employee's ability to avoid an employer-controlled activity is not dispositive outside of the commuting context. As discussed above, the *Bono* court concluded that temporary workers who were required to remain on the premises during their lunch break were entitled to compensation because they were subject to the employer's control. (*Bono*, *supra*, 32 Cal.App.4th at p. 975.) This was so even though the requirement was avoidable. There, the employer allowed workers to leave the worksite if they "ma[d]e prior arrangements to reenter the plant after leaving for lunch." (*Id.* at p. 972.) Notwithstanding this exception, the Court of Appeal concluded that the employees who had not made

employees to store their personal belongings in offsite locations, such as lockers or break rooms. We also take no issue with Apple's policy prohibiting employees from shipping personal packages to its stores.

advance arrangements to leave and reenter the plant were subject to the control of their employer. (*Id.* at p. 975.) The court clarified that "those employees [who had made prior arrangements to leave for lunch and reentered the plant] were not restricted to the work site for meal periods and, therefore, did not remain subject to the employer's control." (*Id.* at p. 978, fn. 4.)

Here, as in *Bono*, Apple employees may be able to avoid the employer-controlled activity if they make prior arrangements (i.e., by not bringing a bag, package, or iPhone to work). But, similar to the workers in *Bono*, the potential antecedent "choice" by some employees not to bring any searchable items to work does not invalidate the compensation claims of the bag-toting or Apple-device-carrying employees who are required to remain on the employer's premises while awaiting an exit search of those items.

Finally, notwithstanding the IWC's removal of the word "required" from Wage Order 7's "hours worked" control clause, courts have considered whether an activity is required in determining whether it is compensable. (*Morillion*, *supra*, 22 Cal.4th at p. 587.) But this includes both an activity that is, strictly speaking, required, and also an activity that is required as a practical matter. As the Ninth Circuit here observed, "[w]hether an activity is 'required' is a flexible concept." (*Frlekin*, *supra*, 870 F.3d at p. 873.) The federal court pointed to other decisions recognizing that "only 'genuine' choices — and not 'illusory' choices — avoid compensation liability under California's Wage Orders." (*Ibid.*, citing *Alcantar v. Hobart Service* (9th Cir. 2015) 800 F.3d 1047, 1055, and *Greer v. Dick's Sporting Goods, Inc.* (E.D.Cal., Apr. 13, 2017, No. 2:15-cv-01063-KJM-CKD) 2017 U.S.Dist. LEXIS 57165.) The Ninth Circuit

explained that some "actions . . . are, practically speaking, required, even though they are nominally voluntary. For example, a search policy in a cold climate that applied to all jackets would be effectively unavoidable, even if a person theoretically could commute to work without a jacket." (*Frlekin*, at p. 873.) Notwithstanding that this case concerns only Apple employees who voluntarily bring a bag, package, or iPhone to work "purely for personal convenience," the federal court recognized that "as a practical matter, many persons routinely carry bags, purses, and satchels to work, for all sorts of reasons. Although not 'required' in a strict, formal sense, many employees may feel that they have little true choice when it comes to the search policy, especially given that the policy applies day in and day out." (*Ibid.*)

We agree with the Ninth Circuit. Based on our review of the record, it is obvious that Apple's exit searches are, as a practical matter, required. Pursuant to its bag-search policy, Apple requires all of its retail store employees to undergo exit searches of their bags, purses, backpacks, briefcases, packages and personal Apple technology devices every day, and any time they wish to leave the store. Compliance with the search policy is mandatory; employees who bring a bag or other carrier to work — or even carry an iPhone in a jacket pocket — must undergo a search before leaving the premises or else be subject to disciplinary action, including termination. Apple employees may bring a bag to hold any number of ordinary, everyday items, such as a wallet, keys, cell phone, water bottle, food, or eyeglasses. It is to be expected that many Apple employees feel they have little genuine choice as a practical matter concerning whether to bring a bag or other receptacle containing such items to work. Moreover, given that Apple requires its employees to

wear Apple-branded apparel while working but directs them to remove or cover up such attire while outside the Apple store, it is reasonable to assume that some employees will carry their work uniform or a change of clothes in a bag in order to comply with Apple's compulsory dress code policy. Apple's proposed rule conditioning compensability on whether an employee can *theoretically* avoid bringing a bag, purse, or iPhone to work does not offer a workable standard, and certainly not an employee-protective one. (See *Dynamex*, *supra*, 4 Cal.5th at p. 952 [the wage orders are intended to accord workers "a modicum of dignity and self-respect"].)

Apple's personal convenience argument rings especially hollow with regard to personal Apple technology devices, such as an iPhone. As the United States Supreme Court observed in *Riley v. California* (2014) 573 U.S. 373, "modern cell phones . . . are now such a pervasive and insistent part of daily life that the proverbial visitor from Mars might conclude they were an important feature of human anatomy." (*Id.* at p. 385.) More recently, the high court remarked that "individuals . . . compulsively carry cell phones with them all the time." (*Carpenter v. United States* (2018) 585 U.S. ___, ___ [138 S.Ct. 2206, 2218].) Apple has publicly agreed with the high court's description of cell phones, joining an amici curiae brief filed in *Carpenter* that characterized smartphones as "practical necessities of modern life," "fundamental tools for participating in many forms of modern-day activity," and "*not just another technological convenience.*" Consistent with this view, Apple's CEO Tim Cook recently referred to the iPhone as having "become so integrated and integral to our lives, you wouldn't think about leaving home without it." (*Jim Cramer interviews Tim Cook: the complete transcript* (interview with Tim Cook,

Apple CEO) CNBC (May 3, 2017) <https://www.cnbc.com/ 2017/05/03/tim-cook-on-jim-cramer-complete-transcript.html> [as of Feb. 4, 2020].)[6]

The irony and inconsistency of Apple's argument must be noted. Its characterization of the iPhone as unnecessary for its own employees is directly at odds with its description of the iPhone as an "integrated and integral" part of the lives of everyone else. As amicus curiae California Correctional Peace Officers' Association aptly observes, "Apple's position everywhere *except in defending against this lawsuit* is that use of Apple's products for personal convenience is an important and essential part of participating fully in modern life." (Italics added.) Given the importance of smartphones in modern society, plaintiffs have little true choice in deciding whether to bring their own smartphones to work (and we may safely assume that many Apple employees own Apple products, such as an iPhone).[7]

---

[6] All Internet citations in this opinion are archived by year, docket number and case name at <http://www.courts.ca.gov/ 38324.htm>.

[7] Apple argues that plaintiffs are estopped from asserting that the exit searches are de facto required because they agreed to certify a class based on the theory that Apple employees bring a bag or iPhone to work "purely for personal convenience." But the district court's class certification order specified that plaintiffs would not assert that class members were required to bring bags or personal Apple technology devices to work "*due to any 'special needs.'*" (Italics added.) It did not preclude plaintiffs from asserting that, as a practical matter, they have little genuine choice regarding whether to bring such items to work.

## C.  Application of Control Clause to Exit Searches

In sum, we reaffirm our holding in *Morillion* that "[t]he level of the employer's control over its employees, rather than the mere fact that the employer requires the employees' activity, is determinative" concerning whether an activity is compensable under the "hours worked" control clause.  (*Morillion*, *supra*, 22 Cal.4th at p. 587.)  We also emphasize that whether an activity is required remains probative in determining whether an employee is subject to the employer's control.  But, at least with regard to cases involving *onsite* employer-controlled activities, the mandatory nature of an activity is not the only factor to consider.  We conclude that courts may and should consider additional relevant factors — including, but not limited to, the location of the activity, the degree of the employer's control, whether the activity primarily benefits the employee or employer, and whether the activity is enforced through disciplinary measures — when evaluating such employer-controlled conduct.

Applying these factors here, it is clear that plaintiffs are subject to Apple's control while awaiting, and during, Apple's exit searches.  Apple's exit searches are required as a practical matter, occur at the workplace, involve a significant degree of control, are imposed primarily for Apple's benefit, and are enforced through threat of discipline.  Thus, according to the "hours worked" control clause, plaintiffs "must be paid." (*Bono*, *supra*, 32 Cal.App.4th at p. 975.)  We reiterate that Apple may tailor its bag-search policy as narrowly or broadly as it desires and may minimize the time required for exit searches by hiring sufficient security personnel or employing adequate security technology.  But it must compensate those employees to whom

the policy applies for the time spent waiting for and undergoing these searches.

### D. We Decline to Consider Whether the Searches Are Compensable Under the Suffered or Permitted to Work Clause

Plaintiffs contend the time spent waiting for and undergoing Apple's exit searches is also compensable under the "suffered or permitted to work" clause. Because we have concluded that plaintiffs are entitled to compensation under the control clause, we express no view concerning plaintiffs' alternative argument that the searches are compensable under the "suffered or permitted to work" clause.

### E. Our Ruling Applies Retroactively

Apple asserts that if we conclude the time waiting for and undergoing exit searches is compensable as "hours worked," our holding should be given prospective application only. We are not persuaded.

" 'The general rule that judicial decisions are given retroactive effect is basic in our legal tradition.' " (*Mendiola, supra*, 60 Cal.4th at p. 848, fn. 18.) However, "fairness and public policy sometimes weigh against the general rule that judicial decisions apply retroactively." (*Alvarado v. Dart Container Corp. of California* (2018) 4 Cal.5th 542, 573 (*Alvarado*).) For example, prospective application might be warranted when a judicial decision changes an established rule on which the parties below have relied. (*Ibid.*)

Apple contends that it reasonably relied on *Morillion*'s holding that purely voluntary activities do not constitute employer control. But that is neither an accurate description of our holding in *Morillion*, nor a fair characterization of the

nature of the exit searches at issue in this case. *Morillion* addressed compulsory employer-provided transportation to and from work. (*Morillion*, *supra*, 22 Cal.4th at p. 578.) It did not, as Apple contends, hold that *any* employer-controlled activity must be unavoidably required in order to be compensable as "hours worked." "In short, [Apple] cannot claim reasonable reliance on settled law." (*Alvarado*, *supra*, 4 Cal.5th at p. 573.) Moreover, we have declined to restrict our decisions to prospective application when doing so "would, in effect, negate the civil penalties, if any, that the Legislature has determined to be appropriate in this context, giving employers a free pass as regards their past conduct" and hence "would exceed our appropriate judicial role." (*Ibid.*) Accordingly, we see no reason to depart from the general rule that judicial decisions apply retroactively.

## III. DISPOSITION

We conclude that plaintiffs' time spent on Apple's premises waiting for, and undergoing, mandatory exit searches of bags, packages, or personal Apple technology devices, such as iPhones, voluntarily brought to work purely for personal convenience is compensable as "hours worked" within the meaning of Wage Order 7.

**CANTIL-SAKAUYE, C. J.**

**We Concur:**

**CORRIGAN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**KRUGER, J.**
**GROBAN, J.**
**EDMON, J.**[*]

---

[*] Presiding Justice of the Court of Appeal, Second Appellate District, Division Three, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Frlekin v. Apple Inc.

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding** XXX on request pursuant to rule 8.548, Cal. Rules of Court
**Review Granted**
**Rehearing Granted**


_____

**Opinion No.** S243805
**Date Filed:** February 13, 2020

_____

**Court:**
**County:**
**Judge:**

_____

**Counsel:**

The Kralowec Law Group, Kralowec Law, Kimberly A. Kralowec, Kathleen S. Rogers; McLaughlin & Stern, Lee S. Shalov and Brett R. Gallaway for Plaintiffs and Appellants.

The Turley & Mara Law Firm, William Turley and David T. Mara for Consumer Attorneys of California as Amicus Curiae on behalf of Plaintiffs and Appellants.

Kingsley & Kingsley, Eric B. Kingsley and Ari J. Stiller for Bet Tzedek Legal Services as Amicus Curiae on behalf of Plaintiff and Appellant Amanda Frlekin

Messing Adam & Jasmine, Gregg McLean Adam, Yonatan L. Moskowitz; David A. Sanders and Daniel M. Lindsay for California Correctional Peace Officers' Association as Amicus Curiae on behalf of Plaintiffs and Appellants.

Leonard Carder, Aaron D. Kaufmann; Cohelan Khoury & Singer, Michael David Singer and Janine R. Menhennet for California Employment Lawyers Association as Amicus Curiae on behalf of Plaintiffs and Appellants.

Littler Mendelson, Richard H. Rahm, Julie A. Dunne; Gibson, Dunn & Crutcher, Theodore J. Boutrous, Jr., Joshua S. Lipshutz, Bradley J. Hamburger, Justin T. Goodwin, Lauren M. Blas and Christian Briggs for Defendant and Respondent.

Sheppard, Mullin, Richter & Hampton, Karin Dougan Vogel, Samantha D. Hardy, Richard J. Simmons and John Ellis for Retail Litigation Center, Inc., and National Retail Federation as Amici Curiae on behalf of Defendant and Respondent.

Paul Hastings, Paul W. Cane, Jr., Zachary P. Hutton and Blake R. Bertagna for California Employment Law Council and Employers Group as Amici Curiae on behalf of Defendant and Respondent.

Horvitz & Levy, Jeremy B. Rosen, Felix Shafir and Eric S. Boorstin for Chamber of Commerce of the United States of America, California Chamber of Commerce and Civil Justice Association of California as Amici Curiae on behalf of Defendant and Respondent.

Corbin K. Barthold for Washington Legal Foundation as Amicus Curiae on behalf of Defendant and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Kimberly A. Kralowec
Kralowec Law
750 Battery Street, Suite 700
San Francisco, CA 94111
(415) 546-6800

Theodore J. Boutrous, Jr.
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
(213) 229-7000