Filed 4/9/25  P. v. Ortiz CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B332933 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. Nos. KA051285 and KA052823) |
| v. | |
| GREGORY ROBERT ORTIZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Juan Carlos Dominguez, Judge.  Affirmed.

Deborah L. Hawkins, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Idan Ivri, Supervising Deputy Attorney General, and Roberta L. Davis, Deputy Attorney General, for Plaintiff and Respondent.

\* \* \* \* \* \*

Gregory Robert Ortiz (defendant) appeals from a judgment entered after the trial court recalled his sentence pursuant to Penal Code section 1172.1[1] and, during the ensuing resentencing, reduced his sentence from 152 years to life down to 100 years to life.  He contends the trial court did not properly apply section 1172.1 because it refused to strike one of defendant's two prior strike convictions, which effectively would have resulted in a sentence close to time served.  Because we conclude that the trial court properly applied section 1172.1 and because the trial court did not otherwise abuse its discretion in declining to dismiss one of defendant's prior strike convictions, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I.    Facts

#### A.    *Defendant's early criminal history*

Defendant was born in 1965.

Between 1983 and 1986, defendant incurred seven convictions, six for possession or being under the influence of a

---

[1]    All further statutory references are to the Penal Code unless otherwise indicated.

Section 1172.1 was previously codified in section 1170, subd. (d)(1) and section 1170.03.  (Stats. 2021, ch. 719, § 3.1; Stats. 2022, ch. 58, § 9.)

controlled substance (Health & Saf. Code, §§ 11377, 11550), and one for resisting arrest (§ 148).

In 1988, defendant was convicted of robbery (§ 211).

While on parole following the prison sentence for robbery, defendant in 1991 was convicted of brandishing a deadly weapon (§ 417).

While on parole following the prison sentences for robbery and exhibition of a deadly weapon, defendant in 1994 committed the crimes of second-degree robbery (§ 211) and assault with a deadly weapon (§ 245).

### B.  *First criminal case[2]*

In September 2000, defendant approached a woman as she was getting into her Ford Explorer in the parking lot of a restaurant.  Three children were in the Explorer.  Defendant held a sharp tool to the woman's neck and ordered her out of the vehicle.  As defendant started the Explorer's engine, two of the children jumped out of the vehicle and the woman grabbed the third child.  Defendant then drove away with the vehicle and the woman's purse.

Three weeks later, defendant entered a discount store and brought a bag of chips to the cashier.  When the cashier opened the cash register, defendant pulled out a three-inch knife, ordered the cashier to move, and grabbed a handful of cash from the register.

In November 2000, defendant approached a different cashier at the same discount store and pretended to make a

---

[2]     We summarize the evidentiary facts and procedural history from defendant's prior appeals.  On our own motion, we take judicial notice of our prior opinions.  (Evid. Code, § 452, subd. (d).)

3

purchase.  When the cashier opened the cash register, defendant pulled out a knife, told the cashier not to make noise, and grabbed a handful of cash from the register.

For the first incident, the People charged defendant with (1) carjacking (§ 215, subd. (a)), (2) second-degree robbery (§ 211), and (3) grand theft auto (§ 487, subd. (d)).  As to each of the second and third incidents, the People charged defendant with second-degree robbery (§ 211).  As to all counts, the People alleged that defendant personally used a dangerous or deadly weapon (§ 12022).  The People further alleged that defendant's 1988 and 1994 robbery convictions constituted "strikes" within the meaning of our State's Three Strikes Law (§§ 1170.12, subds. (a)-(d), 667, subds. (b)-(i)), as well as prior serious felonies (§ 667.5, subd. (a)).

After a jury convicted defendant of each of the aforementioned charges and found true all enhancements, and after the court found true the prior convictions, the trial court imposed a prison sentence of 14 years plus 77 years to life.  For the first incident, the court imposed a sentence of 29 years to life, comprised of a sentence of 27 years to life for the carjacking (consisting of a high-end base sentence of nine years, tripled under the Three Strikes Law) plus two years for the personal use of a weapon; the court stayed the associated second-degree robbery and grand theft auto sentences.  For each of the second and third incidents, the court imposed sentences of 25 years to life (as a third-strike felony) plus one year for the personal use of a weapon.  The court ran all of these sentences consecutively. The court then imposed 10 additional years, five years for each prior serious felony.

Defendant's conviction was affirmed on appeal. (*People v. Ortiz* (Dec. 13, 2002, B155184) [nonpub. opn.].)

### C. *Second criminal case*

In January 2001, defendant robbed a cashier at a market at knifepoint, taking approximately $500 from the cash register.

Less than two weeks later, defendant was arrested after abandoning a stolen car.

For the first incident, the People charged defendant with second-degree robbery (§ 211), and alleged that defendant personally used a dangerous or deadly weapon (§ 12022). For the second incident, the People charged defendant with unlawful taking or driving of a vehicle (Veh. Code, § 10851). The People further alleged that defendant's 1988 and 1994 robbery convictions constituted "strikes" within the meaning of our State's Three Strikes Law (§§ 1170.12, subds. (a)-(d), 667, subds. (b)-(i)), as well as prior serious felonies (§ 667.5, subd. (a)).

After a jury convicted defendant of the charged crimes and found true the weapons enhancement, and after defendant admitted the prior convictions, the trial court imposed a prison sentence of 11 years plus 50 years to life. For the first incident, the court imposed a sentence of 25 years to life (as a third-strike felony) plus one year for the personal use of a weapon. For the second incident, the court again imposed a sentence of 25 years to life (as a third-strike felony). The court ran all of these sentences consecutively. The court then imposed 10 additional years, five years for each prior serious felony.

Defendant's sentence was, in pertinent part, affirmed on appeal. (*People v. Ortiz* (Sept. 12, 2002, B153271) [nonpub. opn.].)

5

## II.     Procedural Background

In August 2022, the California Department of Corrections and Rehabilitation sent a letter to the trial court, recommending that defendant's sentence be recalled under section 1172.1.  The letter explained that resentencing was appropriate because the courts had been granted discretion to dismiss prior serious felony enhancements.  Accompanying the letter was a report summarizing defendant's offenses, criminal history, and prison record.  That report indicated that, while incarcerated, defendant had not tested positive for drugs, had not had any reported rules violations, received two satisfactory work reports in 2016, received a "Laudatory Chrono" for work performance during COVID, participated in a partnership for re-entry program, completed two self-help classes in 2022, and was scheduled for an elderly parole hearing in 2026.  The report also indicated that defendant was an active member of a prison gang.

During hearings on May 10, 2023, and August 24, 2023, the trial court recalled the sentences in both cases and set the matter for a "full resentencing" in both cases.  Defendant asked the trial court to dismiss one of the prior "strike" offenses due to their age, which would effectively result in a sentence of time served.  The trial court declined to exercise its discretion to dismiss a "strike," explaining that defendant's relatively good conduct in prison did not outweigh the violent nature of the offenses in these two cases or defendant's history of re-offending, including while on parole. The court nevertheless imposed a sentence 52 years shorter than the original sentence, noting that this reduction would assist defendant in his consideration for elderly parole in 2026. Specifically, the court imposed three consecutive 25-year-to-life sentences for the carjacking and two robberies in the first case,

and a consecutive 25-year-to-life sentence for the robbery in the second case. The court struck all other enhancements and stayed the sentences for the unlawful taking of a vehicle and grand theft auto counts.

Defendant filed this timely appeal.

## DISCUSSION

Defendant argues that the trial court erred in not exercising its discretion to dismiss one of his prior strike offenses, thereby reducing his sentence from 152 years to time served because (1) section 1172.1 requires a "meaningful modification" to his sentences, and (2) the court otherwise abused its discretion in not dismissing a strike. We review sentencing decisions, including whether to dismiss strike allegations, for an abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 374 (*Carmony*).) We review de novo any subsidiary questions of law, including issues of statutory interpretation. (*Tansavatdi v. City of Rancho Palos Verdes* (2023) 14 Cal.5th 639, 652.)

## I.    Does Section 1172.1 Require Any Resentencing To Effect a "Meaningful Modification"?

### A.    *Pertinent law*

Section 1172.1 empowers trial courts to "recall the sentence . . . previously ordered" for a defendant convicted of a felony and to "resentence the defendant in the same manner as if they had not previously been sentenced"; it entails a two-step procedure. (§ 1172.1, subd. (a)(1); accord, *People v. Cepeda* (2021) 70 Cal.App.5th 456, 469, superseded on other grounds, § 667.5, subd. (b); *People v. Braggs* (2022) 85 Cal.App.5th 809, 820 (*Braggs*).)

First, the trial court must decide whether to recall the prior sentence and conduct a new sentencing. When a request for

7

recall and resentencing originates with a custodial or law enforcement agency (such as the Department of Corrections and Rehabilitation, the Board of Parole Hearings, a county correctional administrator, a district attorney or the Attorney General), "[t]here shall be a presumption favoring recall and resentencing" that "may only be overcome if a court finds the defendant currently poses an unreasonable risk" of committing one of several "super strike" offenses. (§§ 1172.1, subd. (b)(2), 1170.18, subd. (c), 667, subd. (e)(2)(C)(iv).) When a court considers recalling a sentence on its own motion, no such presumption exists. (§ 1172.1, subds. (a)(1) & (a)(4).)

Second, if the trial court recalls a defendant's sentence and conducts a new sentencing, the court "may, in the interest of justice . . . [r]educe a defendant's term of imprisonment by modifying the sentence." (§ 1172.1, subd. (a)(3)(A).) In deciding what sentence to impose in this new sentencing hearing, the court "shall" (1) "apply any changes in law that reduce sentences or provide for judicial discretion" (*id.*, subd. (a)(2)) and (2) "consider postconviction factors, including, but not limited to," (a) defendant's "disciplinary record and record of rehabilitation . . . while incarcerated," (b) "evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence," and (c) "evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice" (*id.*, subd. (a)(5)). Although the "new sentence" imposed upon resentencing must be "no greater than the initial sentence" (§ 1172.1, subd. (a)(1)), nothing in the text of section 1172.1 obligates a court to impose a sentence less than the initial sentence. (Accord, *Braggs*, *supra*, 85 Cal.App.5th at p.

8

820 ["the sentence ultimately imposed by the court is left to its discretion without any further application of the presumption [affecting whether to recall the sentence]"].)

**B.** *Analysis*

In challenging the trial court's application of section 1172.1, defendant offers two reasons why the trial court was obligated to reduce his aggregate sentence to a degree sufficient to ensure his imminent or earlier release (that is, by at least 120 years).

First, defendant cites one of the legislative findings contained within Assembly Bill 600 (AB 600), which was signed into law on October 8, 2023 and took effect on January 1, 2024. (Stats. 2023, ch. 446.)[3] Specifically, defendant points us to the uncodified first section of this law, which contains several "find[ings] and declar[ations]" of the Legislature. One of them expresses the "intent of the Legislature that, in cases where the judge concludes that recall and resentencing pursuant to section 1172.1 . . . is appropriate, the resentencing result in a meaningful modification. 'Meaningful modification' means it will cause some actual change in the person's circumstances, including, but not limited to, immediate release, earlier release, and newly acquired entitlement to review by the Board of Parole Hearings or the advancement of eligibility for a parole hearing." (*Id.*, § 1(d).) Because the resentencing in this case only reduced defendant's sentence to 100 years in prison, defendant contends, there was no

---

[3]     Although AB 600 was enacted *after* the resentencing hearings in this case, we will assume it applies and thereby sidestep the question whether it modifies or merely clarifies existing law. (E.g., *McClung v. Employment Development Dept.* (2004) 34 Cal.4th 467, 471-472.)

"meaningful modification" because he still has no opportunity for "immediate" or "earlier release."

We reject defendant's reliance on this legislative finding for two reasons.

To begin, even though "statements of the intent of the enacting body contained in a [statute's] preamble . . . are entitled to consideration" (*People v. Canty* (2004) 32 Cal.4th 1266, 1280; see also *Briggs v. Brown* (2017) 3 Cal.5th 808, 860), the Legislature did not express a clear intent in section 1 of AB 600. Instead, it expressed *several* intents, some of which are irreconcilable as applied here. Although the Legislature articulated the intent that a "resentencing result in a meaningful modification," the Legislature simultaneously expressed the "further intent of the Legislature that courts have full discretion in resentencing proceedings pursuant to Section 1172.1 . . . to reconsider past decisions to impose prior strikes." (AB 600, § 1(b).) A trial court cannot have "full discretion" during a resentencing while simultaneously being required to dismiss prior strikes in order to make a meaningful modification to the new sentence. The Legislature has not expressed any unambiguous intent to obligate trial courts to impose meaningful modifications.

Further, even if the Legislature *had* expressed an unambiguous intent, that intent cannot be reconciled with the plain text of section 1172.1 itself. That text provides that a trial court, upon recalling a sentence, "*may* . . . modify[] the sentence." (§ 1172.1, subd. (a)(3), italics added.) Where, as here, a statute uses both the terms "may" and "shall,"[4] its use of the term "may"

---

4       Section 1172.1 is replete with uses of the word "shall." (See, e.g., § 1172.1, subds. (a)(2), (a)(4)-(9), (b), (b)(1)-(2), (d).)

10

connotes *discretion*—in this instance, discretion whether to modify a recalled sentence *at all*. (*Tarrant Bell Property, LLC v. Superior Court* (2011) 51 Cal.4th 538, 542 ["Under 'well-settled principle[s] of statutory construction,' we 'ordinarily' construe the word 'may' as permissive . . ."].) Section 1172.1 does not state that a court "shall" or "must" modify a recalled sentence, and it certainly does not state that the court must do so to a degree that would guarantee an "actual change in the person's circumstances." In a case such as this one where the only way to effect a meaningful modification is to *obligate* a trial court to exercise its discretion in a specific way by dismissing strikes, the unambiguous statutory text controls. (*Frlekin v. Apple, Inc.* (2020) 8 Cal.5th 1038, 1046; *In re Cervera* (2001) 24 Cal.4th 1073, 1079-1080; *People v. Superior Court (Farley)* (2024) 100 Cal.App.5th 315, 331 [legislative findings "cannot be relied upon as an interpretive tool when they contradict the statute's plain language"]; *Yeager v. Blue Cross of California* (2009) 175 Cal.App.4th 1098, 1103 ["Legislative findings and statements of purpose in a statute's preamble can be illuminating if a statute is ambiguous"].)

Second, defendant cites several of the legislative findings contained within Assembly Bill 1540 (AB 1540), which amended section 1172.1 in 2022. (Stats. 2021, ch. 719.) Section 1 of AB 1540, which was not codified, contains several "find[ings] and declar[ations]" of the Legislature. Among them are that (1) a significant percentage of the prison population is over 50 years old, and it is expensive to maintain someone in prison (*id.*, § 1, subds. (c) and (d)(1)); (2) there is almost no evidence that long sentences deter crimes (*id.*, subd. (d)(3)); (3) research shows that criminal activity "diminishes dramatically" over the age of 40 (*id.*,

11

subd. (d)(4)); (4) Californians have repeatedly and consistently embraced reforms to reduce California's prison population (*id.*, subd. (e)); and (5) recommendations for resentencing coming from law enforcement agencies have been carefully scrutinized (*id.*, subd. (h).)  As with the legislative findings in AB 600, the legislative findings in AB 1540 are not codified and are not listed as factors that must be considered when recalling or resentencing a defendant pursuant to section 1172.1.  Indeed, to give these findings the weight defendant suggests is to ignore section 1172.1's requirement that courts examine whether there is any "*evidence* that reflects whether age, time served, and diminished physical condition . . . have reduced the defendant's risk for future violence" (§ 1172.1, subd. (a)(5), italics added); here, defendant elected not to adduce any such evidence.

## II.     The Trial Court Did Not Abuse Its Discretion In Declining To Dismiss One of Defendant's Prior "Strikes"

A trial court has discretion to dismiss a "strike" allegation under our Three Strikes' Law.  (§ 1385, subd. (a); *People v. Williams* (1998) 17 Cal.4th 148, 161.)  The Three Strikes law was "devised" to impose long sentences on "revolving-door career criminal[s]."  (*People v. Gaston* (1999) 74 Cal.App.4th 310, 320 (*Gaston*).)  In deciding whether to exercise this discretion, the court is instructed to "'consider whether, in light of the nature and circumstances of [the defendant's] present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the [Three Strikes] scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies.'"  (*Carmony*, *supra*, 33 Cal.4th at p. 377.)  There is a

12

"strong presumption" against granting a motion to dismiss a strike. (*Id.* at p. 378.)

The trial court did not abuse its discretion in declining to dismiss one of defendant's two prior "strike" convictions. As the trial court explained, defendant was an itinerant recidivist, committing more than a crime a year between 1983 and 1988, and thereafter violating his parole by committing further crimes. Although his two strikes are relatively old (as they date back to 1988 and 1994), since that time defendant has either continued to commit crimes or been incarcerated; at no point had defendant demonstrated a crime-free life while out of custody. (*Gaston*, *supra*, 74 Cal.App.4th at pp. 321-322 [age of prior strikes is relevant when defendant "led a crime-free life" in the interim, but not when he has "committed an unending series of felonies, as well as other crimes"]; *People v. Daniels* (2009) 176 Cal.App.4th 304, 317 [age of conviction less relevant when "defendant had been incarcerated for the vast majority of that period"].) The felonies underlying the sentences defendant challenged were all violent, and even threatened or traumatized children. And contrary to what defendant asserts on appeal, the trial court properly considered defendant's conduct in prison as part of his prospects. Defendant's contention that the court should have given *less* weight to the nature of his convictions or *greater* weight to factors in his favor is a request that we reweigh the pertinent factors and come to a different discretionary decision than the trial court, but that is beyond our purview. (E.g., *People v. Johnson & Johnson* (2022) 77 Cal.App.5th 295, 352 [under abuse of discretion review, appellate courts ""do not reweigh the evidence or substitute our notions of fairness for the trial court's""].)

13

Although the discretion conferred in any given context must be "consistent" with the "intended purpose" of the statute conferring that discretion (*People v. Rodriguez* (2016) 1 Cal.5th 676, 685), the text of section 1172.1—which is "typically . . . the best and most reliable indicator of the Legislature's intended purpose" (*Larkin v. Workers' Comp. Appeals Bd.* (2015) 62 Cal.4th 152, 157)—provides that, if a resentencing occurs, the trial court is to "resentence the defendant in the same manner as if they had not previously been sentenced" (§ 1172.1, subd. (a)(1)), which implies the application of the usual rules of sentencing, including the usual standards applicable to evaluating whether to dismiss a "strike."  Our conclusion is reinforced by section 1172.1's structure which separates the decision to recall and sentence from the decision of what sentence to impose; the statute tilts the former decision toward granting relief when law enforcement so recommends, but not the latter decision.

Lastly, because the "meaningful modification" standard is not incorporated into section 1172.1, and was not in effect at the time of defendant's resentencing hearings, the trial court did not somehow impermissibly delegate the determination of when a "meaningful modification" occurs to the Board of Parole Hearings.

## DISPOSITION

The judgment is affirmed.

_____, P. J.
HOFFSTADT

I concur:

_____, J.
MOOR

14

The People v. Gregory Ortiz
B332933


BAKER, J., Concurring


Without reservation, I agree with the opinion for the court's holding that the Legislature's uncodified statement of its intent that Penal Code section 1172.1 (section 1172.1) grants of relief result in a "meaningful modification" to a defendant's sentence is not binding on a trial court and should instead be viewed as hortatory (see *Briggs v. Brown* (2017) 3 Cal.5th 808, 860). The court here thus was not statutorily *obligated* to reduce defendant and appellant's sentence more than it did.

Only with reservations, however, do I agree with the opinion for the court's approach to resolving the related question of whether the trial court abused its discretion when it declined to strike one of defendant's prior "strike" crimes in fashioning the section 1172.1 relief it granted. The opinion for the court holds a trial court ruling on whether to strike a strike in the context of a section 1172.1 proceeding must be evaluated solely according to the legal standard our Supreme Court adopted decades ago— including a "'strong presumption' against granting a motion to dismiss a strike" (citing *People v. Carmony* (2002) 33 Cal.4th 367, 378). By all appearances, that was the trial court's view in this case too. On the record, the court stated its belief that its "great power to dismiss a prior strike conviction should only be used in extraordinary circumstances when the ends of justice demand it."

The court was further guided by its understanding that "[a] trial court abuses its discretion when it dismisses a defendant's prior strike conviction in the absence of extraordinary circumstances that would take the defendant outside of the spirit of the Three Strikes law."

I believe this approach is in tension with the principle that a court's exercise of discretion must be informed by the legal framework in which discretion is exercised. (See, e.g., *People v. Rodriguez* (2016) 1 Cal.5th 676, 685; *Sargon Enterprises, Inc. v. Univ. of Southern Cal.* (2012) 55 Cal.4th 747, 773 ["'The scope of discretion always resides in the particular law being applied . . .'"].) Here, that framework would seem to include not just the Three Strikes law but also section 1172.1 and Penal Code section 1385, the latter of which the Three Strikes law has always kept open as an available avenue for relief. (Pen. Code, § 1170.12, subd. (d)(2); see also *People v. Rojas* (2023) 15 Cal.5th 561.) I nevertheless join the holding that there was no abuse of discretion here because I believe we are bound by *Carmony*'s articulation of the limits on the exercise of discretion—at least absent further guidance from our Supreme Court on how courts should consider, in the specific context of a section 1172.1 recall of sentence proceeding that can only be initiated by a court or law enforcement agency (broadly defined to include the Department of Corrections and Rehabilitation) (§ 1172.1, subd. (c)), whether striking a strike is in furtherance of justice.

BAKER, J.