Filed 9/16/21  Rojas-Cifuentes v. Am. Modular Systems CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| MIGUEL ANGEL ROJAS-CIFUENTES, | C088775 |
| Plaintiff and Appellant, | (Super. Ct. No. STKCVUOE20150007793) |
| v. | |
| AMERICAN MODULAR SYSTEMS INC., | |
| Defendant and Respondent. | |

This is an appeal from an order denying a request for class certification.  Miguel Angel Rojas-Cifuentes (Rojas) sued his former employer, American Modular Systems Inc. (AMS), alleging violations of various labor laws.  In a motion for class certification, as relevant here, Rojas sought class treatment for three of his claims.  First, he sought to certify a class consisting of employees who were allegedly underpaid for certain travel time.  According to Rojas, AMS employees are occasionally required to travel throughout the state on company business but are not paid the appropriate wage for their travel time.  Second, Rojas sought to certify a class consisting of employees who were allegedly

1

underpaid because of AMS's timekeeping system.  AMS generally pays its employees based on their scheduled work times (6:00 a.m. to 2:30 p.m.) and prohibits employees from working outside those hours without permission.  AMS, however, allows employees to punch in a few minutes before 6:00 a.m. and after 2:30 p.m.  In Rojas's view, to the extent AMS employees punch in before 6:00 a.m. or after 2:30 p.m., they are entitled to additional pay for this time.  Finally, Rojas sought to certify a class consisting of employees who allegedly did not receive timely meal breaks.  The trial court, however, declined to certify a class for any of these claims, reasoning that resolving Rojas's allegations would require too many individualized inquiries to be appropriate for class treatment.

On appeal, Rojas contends the trial court wrongly denied class certification on these three claims.  We agree in part.  The trial court's ruling rested in part on a mistaken view of the law governing travel time.  In the trial court's view, employees are not entitled to compensation for travel time "as a matter of law" unless they are required to travel to job sites in company vehicles.  But although that conclusion is largely consistent with the general rule that time spent commuting to and from work is not compensable, the law is more complicated for employees, like those here, who are required to travel to distant places for temporary work assignments.  We remand the case to the trial court for further proceedings on Rojas's travel claim and otherwise affirm.

BACKGROUND

I

*AMS and Its Grace Period Policy*

AMS manufactures and installs modular classrooms for schools.  It manufactures these classrooms at two facilities in Manteca, California, and it then installs them at locations throughout the state.

Employees at AMS's Manteca facilities typically begin their shifts at 6:00 a.m. and end at 2:30 p.m.  An initial bell at 6:00 a.m. instructs employees to begin working, a

2

second bell at 2:20 p.m. tells employees to begin cleaning their workspace, and a third bell at 2:30 p.m. tells employees to cease working.

Under AMS's "grace period" policy, employees may enter AMS's facilities and "punch in" up to five minutes before 6:00 a.m., but they may not begin working before the bell at 6:00 a.m. signals the start of work.[1]  Nor, under AMS's policy, may they continue working after 2:30 p.m.  AMS informs employees about its rule prohibiting working before 6:00 a.m. and charges certain supervising employees with enforcing this rule.  Based on this policy, AMS typically compensates its employees based on their scheduled start and end times, even if the times they punch in and out reflect somewhat different times.

II

*Rojas's Class Action Lawsuit*

Rojas worked at one of AMS's facilities for a few months in 2014.  In 2015, he sued AMS in large part because of its "grace period" policy.  In his operative complaint, he raised eight class action claims against AMS, one individual claim, and one claim under the Labor Code Private Attorneys General Act of 2004 (PAGA; Lab. Code, § 2698 et seq.)—a law that authorizes employees who have been the subject of certain Labor Code violations to file representative actions on behalf of themselves and other employees.  (Lab. Code, § 2699.)

In 2018, Rojas moved for class certification for several of his claims, three of which are relevant here.  First, he sought to certify a class consisting of employees who are allegedly entitled to the "prevailing wage" for certain travel time.  Under California's

---

[1]  The time of the grace period appears to have fluctuated over time.  The written policy provided in the record refers to a five-minute grace period, but several AMS employees testified that the policy "[c]urrently" allows "employees to clock in up to ten minutes before 6:00 a.m."

3

prevailing wage law, all workers employed on public works projects of more than $1,000 must be paid no less than the "general prevailing rate of per diem wages," as determined by the director of the Department of Industrial Relations (DIR).  (Lab. Code, §§ 1770, 1771.)  According to Rojas's motion, AMS failed to compensate employees at the prevailing wage for all "travel time related to a public works project."  Supporting this claim in a written declaration, Rojas said he and other employees "occasion[ally]" traveled to install AMS's modular classrooms at various sites in California, including "as far as Bakersfield, Covina, La Puente, and El Monte," but they were not paid the prevailing wage for this time.

Second, Rojas sought to certify a class consisting of employees who were not paid according to their timecards.  This proposed class is premised on AMS's "grace period" policy.  Under that policy, again, AMS pays its employees based on their scheduled start and end times rather than the times they punch in and out.  But according to Rojas's motion, employees are working "[o]nce they are punched in," and so AMS needs to compensate its employees based on their timecards rather than their scheduled work times.

Third, Rojas sought to certify a class consisting of employees who allegedly did not receive timely meal periods.  This proposed class also relates to AMS's "grace period" policy.  According to Rojas's motion, as relevant here, because employees often punch in before 5:59 a.m. but do not receive a meal break until 10:59 a.m., they often receive their meal breaks after working more than five hours straight—which violates the law on meal breaks.  (See Industrial Welf. Com., wage order No. 1-2001 (Cal. Code Regs., tit. 8, § 11010, subd. 11(A)) [under the wage order generally applicable to those employed in the manufacturing industry, "[n]o employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes," with one exception irrelevant here].)

4

The trial court, however, declined to certify any of Rojas's proposed classes. We will cover the court's specific reasoning later but, for now, we note its overall conclusion: "Because of the lack of common issues of law and fact in [Rojas's] case and the putative class, there is no benefit to the Court or to the litigants in certifying any of the proposed classes."

Rojas timely appealed.[2]

DISCUSSION

I

*Class Certification Principles*

The California Supreme Court has described three general requirements for the certification of a class action: "The party advocating class treatment must demonstrate the existence of an ascertainable and sufficiently numerous class, a well-defined community of interest, and substantial benefits from certification that render proceeding as a class superior to the alternatives." (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1021 (*Brinker*); see also Code Civ. Proc., § 382.) The second of these requirements—"a well-defined community of interest"—embodies three additional requirements of its own: " ' "(1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class." ' [Citation.]" (*Ibid.*)

Our case focuses on only one of these several requirements—namely, the moving party's need to show there are questions of law or fact common to the class. In examining whether a party has made this showing, courts consider " 'whether the theory

---

[2]    In an earlier stage of this proceeding, the trial court dismissed Rojas's PAGA cause of action following AMS's motion for summary adjudication. Rojas afterward filed a petition for writ of mandate seeking to vacate the court's decision, and we later directed the trial court to set aside its decision. (See *Rojas-Cifuentes v. Superior Court* (2020) 58 Cal.App.5th 1051, 1055.)

of recovery advanced by the proponents of certification is, as an analytical matter, likely to prove amenable to class treatment.' [Citation.]" (*Brinker*, *supra*, 53 Cal.4th at p. 1021.)  Courts also, when making this determination, consider the defendant's affirmative defenses, "because a defendant may defeat class certification by showing that an affirmative defense would raise issues specific to each potential class member and that the issues presented by that defense predominate over common issues." (*Walsh v. IKON Office Solutions, Inc.* (2007) 148 Cal.App.4th 1440, 1450; see also *Duran v. U.S. Bank National Assn.* (2014) 59 Cal.4th 1, 28-30 [defenses raising individual questions may defeat class certification].)

We review a trial court's ruling on a certification motion "for abuse of discretion and generally will not disturb it ' "unless (1) it is unsupported by substantial evidence, (2) it rests on improper criteria, or (3) it rests on erroneous legal assumptions." ' [Citation.]" (*Ayala v. Antelope Valley Newspapers, Inc.* (2014) 59 Cal.4th 522, 530.)  In performing this review, we consider "the trial court's actual reasons for granting or denying certification; if they are erroneous, we must reverse, whether or not other reasons not relied upon might have supported the ruling." (*Ibid.*)  "In this respect, ' "appellate review of orders [granting or] denying class certification differs from ordinary appellate review. Under ordinary appellate review, we do not address the trial court's reasoning and consider only whether the result was correct." ' " (*McCleery v. Allstate Ins. Co.* (2019) 37 Cal.App.5th 434, 450.)  But when reviewing an order granting or denying class certification, we " 'review only the reasons given by the trial court for [the grant or] denial of class certification, and ignore any other grounds that might support [the grant or] denial.' [Citation.]" (*Ibid.*)

II

*Prevailing Wage Class*

Rojas, again, sought class treatment for three claims that are relevant to this appeal. We consider first his proposed class involving employees who are allegedly owed the "prevailing wage for their travel to public work sites."

A. *Background*

According to Rojas's motion for class certification, AMS failed to compensate its employees at the prevailing wage for all "travel time related to a public works project." Elaborating on the point in a written declaration, Rojas said he and other employees "occasion[ally]" traveled to install AMS's modular classrooms at various sites in California, including "as far as Bakersfield, Covina, La Puente, and El Monte, and sometimes stay[ed] overnight in motels," but they were not paid the prevailing wage for this time. The prevailing wage rate, again, is the basic hourly rate owed to workers employed on public works projects of more than $1,000, and it is determined by DIR's director based on the type of work and location of the project. (Lab. Code, §§ 1770, 1771.)

The trial court, however, declined to certify a class on this topic. In its view, too many individualized issues would predominate because the need to compensate at the prevailing wage for travel time would " 'depend[] on the employee's classification, as well as [the] prevailing wage order and [the] contract' " at issue. Focusing on the differing contracts, the court found AMS employees may or may not have a right to compensation for travel time depending on the relevant contract. Some contracts, the court indicated, required AMS employees to travel to labor sites in company vehicles and so likely required compensation for travel time. But most contracts, it found, allowed employees to choose whether to commute in AMS vehicles and so, "as a matter of law," did not entitle employees to compensation for travel time.

7

B.     *Analysis*

Rojas challenges the trial court's ruling for several reasons.  Most relevant here, he contends the court wrongly found that the terms of "individualized contracts" would need to be considered.  In his view, "travel time related to public works is compensable at the prevailing wage," regardless of the terms of any contract, as "settled by the DIR as well as California case law."  Although we reject Rojas's preferred reading of the law, we agree the trial court incorrectly found that AMS's employees' right to compensation would necessarily depend on their contracts.

We start with some general principles on compensable work time (or "hours worked"), focusing in particular on compensable travel time.  The Industrial Welfare Commission, a now defunded state agency, has formulated various "wage orders" governing 16 specific industries and occupations.  (*Martinez v. Joe's Crab Shack Holdings* (2014) 231 Cal.App.4th 362, 373 & fn. 13; see also *Brinker*, *supra*, 53 Cal.4th at p. 1027 [discussing these wage orders and finding they "are to be accorded the same dignity as statutes"].)  Most of these orders—including the order both parties agree is applicable here, which applies to all nonexempt "persons employed in the manufacturing industry"—define "[h]ours worked" to mean "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."  (See, e.g., Cal. Code Regs., tit. 8, § 11010, subd. 2(G).)  But most of these orders, including the one both parties reference, include no mention of travel time.

Other authorities, however, do discuss the compensability of travel time and show that the time an employee spends commuting to and from work is generally not compensable.  Consider, for example, Labor Code section 510, subdivision (b).  Enacted originally in the early 1980's, the law was intended in part, according to its proponents, to "make clear that a day's work begins in the office, not commuting to and from."  (Sen. Democratic Caucus, Dig. of Assem. Bill No. 549 (1981-1982 Reg. Sess.) as amended

8

Mar. 25, 1982, p. 2.)  In particular, the law sought to clarify that employers that support voluntary ridesharing programs need not compensate their employees for time spent commuting to work using these programs.  To that end, the statute provided (and still provides today):  "Time spent commuting to and from the first place at which an employee's presence is required by the employer shall not be considered to be a part of a day's work, when the employee commutes in a vehicle that is owned, leased, or subsidized by the employer and is used for the purpose of ridesharing, as defined in Section 522 of the Vehicle Code."  (Stats. 1982, ch. 185, p. 563, § 1; see Lab. Code, § 510, subd. (b).)  Recognizing the broader principles underlying Labor Code section 510, subdivision (b), the California Supreme Court recently characterized the statute this way: "[T]ime spent commuting to and from work is not considered to be part of a day's work." (*Frlekin v. Apple Inc.* (2020) 8 Cal.5th 1038, 1051.)

The California Supreme Court's decision in *Morillion v. Royal Packing Co.* (2000) 22 Cal.4th 575 (*Morillion*) is consistent with these principles, recognizing that travel time is generally not compensable and depends on "[t]he level of the employer's control over its employees . . . ." (*Id.* at p. 587.)  The court there found that certain agricultural employees who were required to travel to work on their employer's buses were entitled to compensation for their time on the buses.  It reasoned that, under the applicable wage order, this time constituted " 'hours worked' " because the employees were " 'subject to the control of [their] employer' . . . during this travel period." (*Id.* at p. 578.)  But the court emphasized that an employee's commute time is not compensable simply because the employer requires the employee's presence at work.  The employee's entitlement to compensation for this time instead, the court explained, depends on "[t]he level of the employer's control over its employees, rather than the mere fact that the employer requires the employees' activity . . . ." (*Id.* at p. 587.)

The court's decision in *Overton v. Walt Disney Co.* (2006) 136 Cal.App.4th 263 (*Overton*) is similar.  The court there considered whether employees who opted to use an

9

employer-provided shuttle to reach their usual place of work were entitled to compensation for the time they spent on the shuttle. (*Id.* at p. 265.) It found they were not, reasoning the employees were "free to choose not to ride the shuttle" and so were not, within the meaning of the applicable wage order, " 'subject to the control of [their] employer' " during their time on the shuttle. (*Id.* at pp. 269-271.) *Overton*, then, like *Morillion* before it, demonstrates that the time an employee spends commuting to and from work is generally not compensable time, absent some special circumstance showing the employee is subject to the employer's control during this time.

Relying on these principles, and particularly *Overton* and Labor Code section 510, the trial court here concluded that AMS employees who were not obligated, under their contracts, to use company vehicles to travel to public works sites were not entitled to compensation for their travel time "as a matter of law." But although *Overton* and Labor Code section 510 lend some support to this conclusion, both these authorities (and *Morillion*) are distinguishable in an important respect: They are concerned with employees who are commuting to and from their standard place of work, not employees, like those here, who are traveling to distant places for temporary assignments. And in this latter context, the law is more complicated.

Federal law demonstrates the point. Consider the federal Fair Labor Standards Act (FLSA; 29 U.S.C. § 201 et seq.), which supplies the minimum labor standards that apply absent more protective state law. (See 29 U.S.C. § 218; 29 C.F.R. § 778.5 (2021); *Morillion*, *supra*, 22 Cal.4th at p. 594 [the FLSA controls when it is more beneficial to employees than state law]; see also 29 U.S.C. § 203(s)(1) [an "enterprise" is subject to the FLSA's requirements if, as relevant here, it (1) "has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person," and (2) has gross sales of at least $500,000].) Similar to California law, "[o]rdinary home to work travel is not compensable under the

10

FLSA . . . ." (*Imada v. City of Hercules* (9th Cir. 1998) 138 F.3d 1294, 1296; see 29 C.F.R. § 785.35 (2021).) But some travel time is compensable under the FLSA. For example, suppose "an employee who regularly works at a fixed location in one city is given a special 1-day work assignment in another city." (29 C.F.R. § 785.37 (2021).) Federal law considers the travel time in that scenario to be compensable to the extent it exceeds the normal home-to-work commute. (*Ibid.*) It also, among other instances, considers "[t]ravel that keeps an employee away from home overnight" to be compensable "when it cuts across the employee's workday." (29 C.F.R. § 785.39 (2021).)

California law, as best we can tell, includes no comparable rule addressing this issue. But several opinion letters from DIR's Division of Labor Standards Enforcement (DLSE), which courts may consider for guidance (*Brinker*, *supra*, 53 Cal.4th at p. 1029, fn. 11), do address the topic. We note one 2003 opinion letter in particular. In that letter, DLSE distinguished between (1) employees who, "by the nature of the industry and the occupation, are not assigned to a specific workplace and have a reasonable expectation that they will be routinely required to travel reasonable distances to job sites on a daily basis," and (2) employees who, "by the nature of their occupation, [are] normally assigned to a specific work location or who report to, or headquarter in, a specific work location." Employees in the former category, DLSE concluded, generally are not entitled to compensation for their travel time—though, qualifying the point somewhat, DLSE said that "unreasonably extended travel could be compensable depending on the surrounding circumstances." Employees in the latter category, however, DLSE went on, are often entitled to compensation for their travel time. In particular, DLSE said: "[I]n the event an employee with a fixed and assigned workplace is required, on a short-term basis, to travel anything more than a *de minimis* distance to report to work at a place other than an employee's usual work place, the employee is entitled to be compensated for the additional time measured by the difference in the time normally required to travel

11

between the employee's home and the regularly assigned workplace and the time between home and the temporary worksite." (DIR, DLSE Opn. Letter No. 2003.04.22 (Apr. 22, 2003) at p. 4 <https://www.dir.ca.gov/dlse/opinions/2003-04-22.pdf> [as of Sept. 16, 2021], archived at <https://perma.cc/6DNK-3PDL>.)

We need not decide here whether we agree with DLSE's interpretation of state law governing travel time—a topic none of the parties discuss in their briefing. For our purposes, it is enough that, even if California law offers nothing on this topic, federal law at least does and is inconsistent with the trial court's understanding of the relevant principles governing compensable travel time. Again, according to the trial court, employees who were not obligated, under their contracts, to use company vehicles to travel to public works sites were not entitled to compensation for their travel time "as a matter of law"—no matter how far away the work site and no matter how unusual the assignment for the employees. But that position conflicts with federal requirements governing required compensation. (See, e.g., 29 C.F.R. § 785.37 (2021) ["an employee who regularly works at a fixed location in one city," and who is "given a special 1-day work assignment in another city," is entitled to compensation to the extent the "special" commute exceeds the normal home-to-work commute]; 29 C.F.R. § 785.39 (2021).) And because federal law is applicable here absent stronger California protections, we find that reason enough to reverse the trial court's decision and remand for reconsideration. After all, if the court's stated "reasons for granting or denying certification. . . are erroneous, we must reverse, whether or not other reasons not relied upon might have supported the ruling." (*Ayala v. Antelope Valley Newspapers, Inc.*, *supra*, 59 Cal.4th at p. 530.)

Rojas, seeking an even broader ruling in his favor, contends "DIR as well as California case law" show that *all* "travel time . . . related to public works is compensable at the prevailing wage." But to support this claim, he never cites the promised "California case law." And although he at least references DIR's Public Works Manual and its administrative decision in *Kern Asphalt Paving & Sealing Co.*, *Inc.* (Mar. 28,

12

2008), Case No. 04-0117-PWH (*Kern Asphalt*), we find neither persuasively supports his position.

The manual, we acknowledge, appears supportive at first blush. It describes two types of travel pay—(1) "per diem wages" for travel, which "are fixed daily amounts due to workers whenever the terms of a collective bargaining agreement are adopted by the [DIR's] Director as setting forth the prevailing wage rates in a particular locality" (see Lab. Code, § 733.1, subd. (a)(4)), and (2) hourly wages for travel, which are due to workers for travel time that constitutes " 'hours worked.' " Our focus is on the latter type of travel pay, and on that topic, the manual says: "Travel time related to a public works project constitutes 'hours worked' on the project, which is payable at not less than the prevailing rate based on the worker's classification, unless the Director's wage determination for that classification specifically includes a lesser travel time rate." (DIR, Office of the Labor Commissioner, Public Works Manual (May 2018) at p. 42, § 4.1.5 & p. 38, § 4.1.1 <https://www.dir.ca.gov/dlse/PWManualCombined.pdf> [as of Sept. 16, 2021], archived at <https://perma.cc/3PYR-25XH>.)

But the manual—which we consider only "to the extent we find it persuasive" (*Alvarado v. Dart Container Corp. of California* (2018) 4 Cal.5th 542, 567)—bases this statement on the DIR's decision in *Kern Asphalt*, and that decision said something quite different. The DIR's director there found employees who were "required to punch in" at the employer's office "and then were transported in company vehicles to the construction site" were entitled to compensation for their travel time from their employer's office to the construction site. (*Kern Asphalt*, *supra,* at pp. 3, 13, archived at <https://web.archive.org/web/20200421064831/https://www.dir.ca.gov/oprl/1742decisions/04-0117-PWH.pdf>.) That was because, DIR's director reasoned in reliance on *Morillion*, " '[h]ours worked' " is defined to include " 'the time during which an employee is subject to the control of an employer,' " and, in this case, the employees were "subject to [their employer's] control" during their travel time to the construction

13

site. (*Kern Asphalt,* at pp. 12-13.) But notably, DIR's director then went on to say that had "the workers only had to report to the construction site by a certain time, then the travel time might have constituted non-compensable commute time." (*Id.* at p. 13.) Rojas's own authority, then, stops short of supporting his broad claim that "travel time related to public works is," regardless of the circumstances, always "compensable." And because we find no other authority favoring Rojas's preferred reading of the law, we decline to endorse his position here.[3]

### III

### *Unpaid Wage Class*

We consider next the proposed class of employees who were not paid according to their timecards.

A. *Background*

Rojas's proposed class here concerns those affected by AMS's "grace period" policy. Under that policy, again, AMS allows employees to clock in up to five minutes before their scheduled start time (6:00 a.m.) but prohibits employees from working before that time. AMS then compensates its employees based on their scheduled start and end times rather than the times they punch in and out. According to Rojas's motion for certification, AMS undercompensates its employees as a result of this practice. In his view, employees are working "[o]nce they are punched in," and so AMS needs to

---

[3] Rojas also challenges the balance of the court's reasoning for finding individualized issues predominated, contending "[t]he rest of the court's concerns— regarding employee classifications, for instance—are merely damages questions and not barriers to class certification." (See *Employment Development Dept. v. Superior Court* (1981) 30 Cal.3d 256, 266 ["a class action is not inappropriate simply because each member of the class may at some point be required to make an individual showing . . . as to the amount of his or her damages"].) But because, as discussed, we find the court's ruling rested in part on an improper legal assumption and reverse for that reason, we need not address this additional ground for reversal.

14

compensate its employees based on the times they punch in and out rather than their scheduled work times.

The trial court, however, declined to certify a class on this issue after finding too many individual issues predominated. Determining whether employees were subject to AMS's control (i.e., working) in the period after they punched in and before their scheduled start time, the court concluded, would depend on too many individualized inquiries. Considering the offered evidence, the court noted that (1) AMS's policy prohibits employees from working before the start time for each day's shift, even if they punch in before that time, and (2) "many employees confirmed in their testimony that they did not work before the 6:00 a.m. start time," but rather did as they pleased until the bell signaled the start of work. Perhaps some employees, the court wrote, could nonetheless show they worked in the period after punching in and before the scheduled start of work. But making that determination, the court concluded, would require "individualized inquiries . . . to determine if an employee who punched in during the grace period prior to the 6:00 a.m. scheduled start time was working."

B.     *Analysis*

On appeal, Rojas copies and pastes, nearly verbatim, his argument from his certification motion. He then adds that the trial court's denying certification of his proposed unpaid wage class conflicts with the California Supreme Court's decision in *Troester v. Starbucks Corp.* (2018) 5 Cal.5th 829 (*Troester*). We find no conflict.

In *Troester*, which did not concern class certification, the court considered whether brief periods of work may go uncompensated on the theory that these periods are de minimis. (*Troester*, *supra*, 5 Cal.5th at p. 834.) Focusing on the facts before it— "where the employer required the employee to work 'off the clock' several minutes per shift"—the court found this "off the clock" time could not go uncompensated. (*Id.* at p. 835.) But the court declined to "decide whether there are circumstances where

15

compensable time is so minute or irregular that it is unreasonable to expect the time to be recorded." (*Ibid.*)

In Rojas's apparent view, the *Troester* decision effectively requires courts to find that all time after an employee punches in constitutes hours worked, regardless of the underlying facts. But if anything, the *Troester* decision tends to favor the opposite conclusion. The court there, after all, found the time after an employee punched out could still be hours worked. (*Troester*, *supra*, 5 Cal.5th at p. 835 [finding an employee needed to be compensated for the time he worked " 'off the clock' "].) In this way, then, the decision shows that the time an employee punches in and out is not, as Rojas suggests, necessarily reflective of hours worked. The underlying facts matter.

Other courts have found similarly under circumstances more like our own. Take *Silva v. See's Candy Shops, Inc.* (2016) 7 Cal.App.5th 235 (*Silva*), disapproved on other grounds in *Donohue v. AMN Services, LLC* (2021) 11 Cal.5th 58, 77. The court's decision there reflects, in some respect, the flip side of *Troester*—it found the time after an employee punches in is not necessarily time worked. The *Silva* court considered a policy similar to the one before us, though not in the class certification context. Similar to here, that policy permitted certain employees to "punch the time clock up to 10 minutes before their scheduled start times and 10 minutes after their scheduled end times." (*Silva,* at p. 252.) As here, "[b]ecause employees [we]re required to comply with company policy that prohibit[ed] them from working during the . . . grace period, if an employee punche[d] into the system during the grace period, the employee [wa]s paid based on his or her scheduled start and stop time, rather than the punch time." (*Ibid.*) And as here, certain employees alleged they lost compensation because their employer paid them based on their scheduled start and end times rather than the times they punched in and out. (*Ibid.*) But considering the employer's "policy of prohibiting employees from working during the grace period," numerous employee declarations showing the employer "exercised no control over the employees during the grace period," and an

16

absence of any persuasive conflicting evidence, the court found "there [wa]s no reasoned basis for concluding that employees were not fully paid for their time under the grace-period policy." (*Id.* at pp. 253, 254.) Together with *Troester*, then, *Silva* demonstrates that the time an employee punches in and out is not determinative in evaluating when that employee is under the employer's control and working. Again, the underlying facts matter. (See also *Anderson v. Mt. Clemens Pottery Co.* (1946) 328 U.S. 680, 690 [90 L.Ed. 1515, 1524] [determining whether time clocks record the actual time worked by employees depends on the case and the underlying facts], superseded by statute on other grounds as stated in *Carter v. Panama Canal Co.* (D.C. Cir. 1972) 463 F.2d 1289, 1293.)

Although Rojas challenges the continued relevance of *Silva*, characterizing it as allowing nonpayment for de minimis work in violation of *Troester*'s principles, we understand the case differently. The *Silva* court did not, as Rojas supposes, reject a challenge to the employer's "grace period" policy on the theory that de minimis work need not be compensated. Nor did it, as Rojas suggests, conclude that the time spent "clocking in and walking to a work station" need not be compensated—an issue that was never even raised in *Silva*. Perhaps, had the employee there sought compensation for the time she spent clocking in and walking to her workspace, the court might have ruled differently. (See *Anderson v. Mt. Clemens Pottery Co.*, *supra*, 328 U.S. at p. 691 [90 L.Ed. at p. 1194] [finding "the time necessarily spent by the employees in walking to work on the employer's premises, following the punching of the time clocks, was working time" under then-applicable federal law].) But no argument along those lines, it appears, was ever raised in that litigation.

Nor has a similar argument been properly raised in this case. Rojas's point, perhaps, in referencing the time spent clocking in and walking is that even if employees are not deemed to be working the moment they punch in, they should at least be considered to be working during the time it takes them to punch in and walk to their stations. But if that is Rojas's intended point, which he never states outright, then it is a

17

theory of recovery different from the one Rojas raised in this litigation. Although he at times noted at the trial level that employees walk to their workstations after punching in, his theory of recovery consistently focused solely on the time recorded on the punch cards. According to his motion for class certification: "This class comprises AMS employees who used the . . . punch card system and were not paid for all time recorded on their punch cards as a result of AMS's policies." And according to both this motion and his appellate briefing: Employees are "subject to AMS' control and performing work" (and thus entitled to compensation) "[o]nce they are punched in"; "it is enough that they are on the clock." Focusing on this theory of recovery, the only theory properly presented, we decline to find the trial court's ruling was inconsistent with *Troester*.[4]

IV

*Meal Period Class*

Finally, we consider the proposed class of employees who allegedly did not receive timely meal periods.

A.    *Background*

Rojas's theory of recovery for his proposed meal period class echoes that for his proposed unpaid wage class. As he acknowledges, his "Meal Break Class . . . 'rises and falls' on the same theory of liability girding the Unpaid Time Class"—which is the theory that employees are deemed to be working "[o]nce they are punched in." Because, Rojas

---

[4]    In his reply brief, Rojas raises a new ground for reversal: The trial court's ruling "was based upon premature merits and damages assessments." He reasons that the trial court should have accepted his allegation that employees are entitled to compensation for the time between clocking in and their scheduled start time, without considering the legal merits of this argument. (See *Brinker*, *supra*, 53 Cal.4th at p. 1025 [in evaluating motions for class certification, courts should generally "eschew resolution" of "disputed threshold legal or factual questions"].) But because Rojas raises this argument for the first time in his reply brief, without good cause, we find it forfeited. (See *Neighbours v. Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 335, fn. 8 [claims raised for the first time in a reply brief, without good cause, are forfeited].)

18

argued in his motion for class certification, employees often punch in before 5:59 a.m., but do not receive a meal break until 10:59 a.m., they often receive their meal breaks after working more than five hours straight—which violates the law on meal breaks. (See Cal. Code Regs., tit. 8, § 11010, subd. 11(A) [under the wage order generally applicable to those "employed in the manufacturing industry," "[n]o employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes," with one exception irrelevant here].)

The trial court, however, declined to certify a class on this issue for the same reason it declined to certify a class on the unpaid wage class: Too many "individualized inquiries would need to be made in order to determine if an employee who punched in during the grace period prior to the 6:00 a.m. scheduled start time was working."

B.    *Analysis*

For largely the same reasons he challenges the trial court's ruling on the proposed unpaid wage class, Rojas challenges the court's ruling on the proposed meal period class. But again, we find none of his arguments for reversal persuasive.

First, Rojas maintains "that common issues predominate with respect to the meal-period claim" and argues that the trial court found differently because it wrongly "conclud[ed] that the time records are not indicative of hours worked." Rojas appears to reason, as with his proposed unpaid wage class, that the court's conclusion in this regard is inconsistent with *Troester*. But for the reasons discussed in part III.B. of the Discussion above, we find Rojas's reliance on *Troester* misplaced. Again, nothing in *Troester* supports Rojas's claim that the time an employee punches in and out is necessarily reflective of hours worked.

Rojas also, similar to his argument in part III.B. of the Discussion, notes that "employees typically clock in, walk across the 300,000 square foot facility, and dress prior to 5:59 a.m. in order to be at their station ready to work by 6:00 a.m."—though he offers no evidence showing employees "typically . . . dress prior to 5:59 a.m." His point

here perhaps is that even if employees are not deemed to be working the moment they punch in, they should at least be considered to be working during the time it takes them to clock in and walk to their stations. But if that is Rojas's intended argument, which he never openly states, then it is a theory of recovery different from the one he raised in this litigation. Again, although at times at the trial level Rojas noted that employees walk to their workstations after punching in, his theory of recovery consistently focused solely on the times recorded on the punch cards. We thus limit our discussion to this theory of recovery and decline to entertain new, and only loosely suggested, theories of recovery. (See *Nellie Gail Ranch Owners Assn. v. McMullin* (2016) 4 Cal.App.5th 982, 997 ["[a]s a general rule, theories not raised in the trial court cannot be asserted for the first time on appeal"].)

Finally, in the last sentence of his argument on this issue, Rojas vaguely contends the trial court considered AMS's "faulty declarations" and "excuses" and ignored Rojas's evidence and "AMS's policy documents, timekeeping and payroll records that clearly demonstrate violations." But Rojas declines to explain his point further and cites nothing in the record to support his characterization of the trial court's conduct. We treat the point as forfeited as a result. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785 ["When an appellant . . . asserts [a point] but fails to support it with reasoned argument and citations to authority, we treat the point as waived"].)

Throughout his brief, Rojas pinned the success of his arguments concerning the unpaid wage class and meal period class on his interpretation of *Troester*. As he characterized his argument: "In sum, the trial court's decision—finding individual issues would defeat class certification—was based upon on [*sic*] the misinterpretion [*sic*] and

misapplication of controlling law under [*Troester*]." But because we reject his reading of that case, we likewise reject his arguments for reversal for these proposed classes.**5**

DISPOSITION

The judgment is reversed in part and affirmed in part. We remand to allow the trial court to reconsider Rojas's proposed "prevailing wage" class, and otherwise affirm. The parties are to bear their own costs on appeal. (Cal. Rules of Court, rule 8.278.)

/s/
BLEASE, J.

We concur:

/s/
RAYE, P. J.

/s/
RENNER, J.

---

**5** At the close of his opening brief, Rojas briefly raises one final argument for reversal on all issues. He asserts that "the [trial] court appears to conclude that class treatment is not superior based on its conclusions on predominance," but [t]his is not the correct standard for determining superiority and the denial of certification cannot be affirmed on that basis." Rojas, in this argument, appears to contend that a lack of common issues of law and fact is not a reason for denying class certification. We view the law differently. Despite Rojas's suggestions to the contrary, a court may properly deny class certification when plaintiffs fail to carry their burden to show that common issues predominate. (See *Lockheed Martin Corp. v. Superior Court* (2003) 29 Cal.4th 1096, 1111 [finding class action inappropriate because individual issues would predominate]; *id.* at p. 1108 ["Plaintiffs' burden on moving for class certification . . . is not merely to show that some common issues exist, but, rather, to place substantial evidence in the record that common issues *predominate*."].)

21